## H. H. SAWYER vs JOHN PATY.

The defendant, as master of a packet running to California, having conveyed a judgment debtor of the plaintiff's out of the Kingdom without a passport, was held liable to pay the debt, under the provisions of the passport law of 1852.
An argument of inconvenience can have no weight in the construction of a statute, where its meaning is plain.

This case was submitted to the court on the following statement of facts :

"The undersigned, attorneys for the plaintiff and defendant in the above entitled suit, submit the following statement of the facts in the case.

"The defendant in this case is, and was, on the 20th of May last, master of a certain vessel called the "Restless," trading between this port (Honolulu) and San Francisco, in California; that a judgment was obtained at the last April Term of this court, by the plaintiff in this case, against Abel Harris, for the sum of $135 37.

"On the 20th of May last, the said judgment being then unsatisfied, as it is at this day, the said Abel Harris was received on board of, and left this Kingdom in, the said vessel called the "Restless," as a passenger, he not having first obtained a passport in manner and form as prescribed by the laws of this Kingdom.

"That the said Abel Harris left this port for the purpose of transacting some business in San Francisco, and of returning to this port. That he did return to Honolulu, where he at present is, and has been ever since the month of July.

"That the debt upon which the aforesaid judgment was recovered, was alleged to have been contracted during the month of February, 1853; and that the said Abel Harris, after the contracting of the said debt, and before the recovery of the said judgment, did leave this Kingdom several times, in the prosecution of his business, and returned hither.

"That at the time of the recovery of the aforesaid judgment by the said Sawyer against the said Harris, he had left this port in the barque "John Wesley," as master, for the purpose of prosecuting a voyage to San Francisco, but was obliged to return.

"That on the day of the sailing of the aforesaid vessel called the "Restless," the said H. H. Sawyer took no means to obstruct the departure of the said Harris, and that the said Abel Harris was, at the time of the bringing of this suit, within the jurisdiction of this court.

"(Signed)    G. M. Robertson, Attorney for plaintiff.
"              " C. C. Harris, Attorney for defendant."

Chief Justice Lee, delivering the opinion of the court said:

The substance of this case is briefly this: Captain Paty, of the schooner "Restless," took out of this Kingdom to San Francisco, in California, one Abel Harris, who was indebted to the plaintiff, Sawyer, in the sum of $135 37, the said Harris not having obtained a passport as required by law, and Sawyer now claims that by so doing, Paty has rendered himself liable to pay the debt of Harris. The defendant answers this claim by saying that Harris returned to the islands, and was within the jurisdiction of the court at the commencement of this suit, and that the plaintiff has lost no remedy, nor suffered any injury by Captain Paty's act.

By the law of 1846, (Stat. Laws, vol. 1, p. 80,) it was provided that, "It shall not be lawful for the commanding officer of any Hawaiian or foreign vessel to carry out of this Kingdom as a passenger, any domiciled alien, naturalized foreigner, or native, without previous exhibition to him of a passport from His Majesty's Minister of Foreign Relations, as prescribed in the second part of this act.

"The commanding officer of any vessel who shall violate the provisions of this article, shall, upon return into His Majesty's jurisdiction, be subject to all the debts and other liabilities to private individuals in this Kingdom, of the passenger so by him carried away; and

s

his vessel to attachment, confiscation and sale, for the payment thereof, as prescribed in the act to organize the judiciary."

By an act passed on the 15th of June, 1848, the act of 1846 was amended, by requiring every person wishing to leave the Kingdom to post a notice of his intended departure before he could obtain a passport; and also imposing upon any master of a vessel who should take abroad any passenger who had not obtained the passport required by law, a penalty of one hundred dollars in addition to the former penalty of being liable to pay the passenger's debts. (Stat. Laws, 1848, pp. 48, 49.)

In 1852, the law relating to passports was further amended; but the liability of masters of vessels to pay the debts of passengers to a foreign country who have not obtained passports, was not in the least impaired, but again re-enacted. Sections 8 and 9 of the act of 1852. (Stat. Laws, 1852, p. 37) read as follows:

Section 8. "Every person who may have resided in the islands, living on shore for more than fourteen days, shall be liable to take out a passport before he can leave the Kingdom."

Section 9. "Every Captain of a vessel, be the flag of such vessel Hawaiian or foreign, who shall convey out of this Kingdom as a passenger, any person whatever to whom this act applies, without a passport, shall be subject for every such person to a fine of fifty dollars, and moreover to be held liable for all the debts and obligations which such passenger may have left unpaid in this Kingdom, and if he should not pay such fine and debts, his vessel shall be subject to attachment, confiscation and sale for the payment thereof."

Now by the reading of the Statutes, it must be obvious to every one, we think, that Captain Paty, by taking Harris out of the Kingdom without a passport, has rendered himself liable for the payment of Harris's debts. The language of the law is clear, direct and unmistakeable, and cannot be violated with impunity. The burden is upon the master of the vessel to see that his passengers have the passports required by law, and if he neglects to do so, and takes them out of the Kingdom without such passports, he voluntarily assumes the responsibility of paying their debts.

But it is said that Harris has returned and was within the jurisdiction of the court at the commencement of this suit, and hence, that Sawyer has sustained no loss by his departure, and ought not to hold Paty responsible. That Sawyer has sustained no loss does not appear, and it is a matter we have no right to presume. But even granting that it were so, it would not relieve Captain Paty of the liability he has incurred to pay the debt. This statute was made *pro bono publico*, and its construction admits of no doubt. Our community is a most fluctuating one, where people come and go as the sands of our shores—where debts are easily contracted, and the vigilance of the creditor as easily eluded by a sudden escape to a foreign country. The evil arising from absconding debtors was a serious one, and to remedy the mischief in part, the law in question was passed; and I am glad to say has worked thus far to the general satisfaction. It has in a great degree protected our merchants, and saved all classes of our community from serious loss.

Again it is urged that a rigid construction of the law would work great inconvenience, and be very serious in its consequences. This

may or may not be so, but an argument of inconvenience and consequences can have no weight unless the construction of the statute be doubtful: "If the meaning of a statute be doubtful, the consequences are to be considered in the construction—but, where the meaning is plain, no consequences are to be regarded in the construction—for this would be assuming a legislative authority." (Bacon's Abridgement, vol. 8, Tit. Statute, p. 255) and authorities there cited.

We do not wish to be understood as saying that this court would not, in a case of extreme hardship, (such for instance as where the master of a vessel, after leaving the Kingdom, discovers that a passenger has no passport and immediately returns with him) do all in its power for the master's relief, but equity as well as law must abide by the statute, and it will be time enough to decide how far we can go for his relief, when such a case arises.

We are all of the opinion that Captain Paty is clearly liable to pay the debt; and accordingly order that judgment be entered for the plaintiff with costs.

(Decided at the October Term, 1854.)